## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| **HAROLD DOSS #421315,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:19-cv-00330** |
| | ) | **Judge Trauger** |
| **TONY MAYS, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>MEMORANDUM</u>

Harold Doss, a pro se state prisoner, filed an amended petition for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. No. 23) and the respondent filed an answer. (Doc. No. 32.) The petitioner filed a reply requesting the appointment of counsel and an evidentiary hearing (Doc. No. 36), and the respondent filed a response in opposition. (Doc. No. 37.) For the following reasons, the petitioner is not entitled to relief under Section 2254, his requests for counsel and an evidentiary hearing will be denied, and this action will be dismissed.

## I.    Procedural Background

A Davidson County grand jury indicted the petitioner and co-defendants Johnathan Hathaway, Courtney Hambric, and Christopher Doss. (Doc. No. 30-1 at 4–9.) The petitioner and co-defendant Hathaway were tried together, with co-defendant Hambric testifying for the State. *See State v. Doss*, No. M2012-02201-CCA-R3-CD, 2014 WL 2592736, at *4 (Tenn. Crim. App. June 10, 2014). A jury convicted the petitioner of felony murder, second-degree murder (as a lesser-included-offense of first-degree murder), especially aggravated robbery, and especially aggravated kidnapping. (Doc. No. 30-1 at 56–59.) The court imposed an effective sentence of life plus 30 years' imprisonment (life for the two merged murder counts, and 30 consecutive years for

the two other counts). (*See id.*) The Tennessee Court of Criminal Appeals (TCCA) affirmed, the Tennessee Supreme Court denied the petitioner's application for permission to appeal,[1] and the United States Supreme Court denied the petitioner's petition for a writ of certiorari. *Doss*, 2014 WL 2592736, *perm. app. denied*, Oct. 15, 2014; *Doss v. Tennessee*, 575 U.S. 1040 (2015).

The petitioner filed a pro se post-conviction petition (Doc. No. 30-26 at 90–96, 102–16), followed by two amended petitions. (Doc. No. 30-27 at 4–13, 32–36.) The court held a hearing (Doc. Nos. 30-28, 30-29) and denied relief. (Doc. No. 30-27 at 64–97.) The TCCA affirmed, and the Tennessee Supreme Court denied review. *Doss v. State*, No. M2019-00238-CCA-R3-PC, 2020 WL 1466306 (Tenn. Crim. App. Mar. 24, 2020), *perm. appeal denied* July 20, 2020.

## II.    Factual Background

On post-conviction appeal, the TCCA provided a concise summary of the trial evidence:

This case arose from the October 20[09] robbery and shooting of Jiro Kanazawa, the victim, who was found dead in Room 118 of America's Best Value Inn in Nashville, Tennessee.

Metropolitan Police Department Officer Isaac Wood testified that on October 5, 2009, he was dispatched to America's Best Value Inn. Officer Wood entered the motel Room 118 and observed the deceased victim lying on the floor. He obtained an address for the person who rented the room from the motel registration form and proceeded to the address, which was associated with Petitioner Doss,[2] but was not able [to] locate the suspect. Detective Wood then obtained bank records for the victim's accounts and was able to trace transactions to a Mapco convenience store and an Exxon convenience store. He obtained video surveillance footage from both stores. In one of the videos, a female and male could be seen walking out of the store, and the victim's vehicle could be seen driving away. Detective Wood obtained still photographs from the video footage and released them to news media. He received a phone call identifying the female from the surveillance video as Courtney Hambric.

---

[1] In denying permission to appeal, the Tennessee Supreme Court designated the TCCA opinion "Not for Citation" and made a harmless-error determination that will be discussed in more detail below. (*See* Doc. No. 30-26 at 57.)

[2] The state courts conducted post-conviction proceedings for the petitioner and co-defendant Hathaway together. *See Doss*, 2020 WL 1466306, at *1. On post-conviction appeal, therefore, the TCCA referred to the petitioner as "Petitioner Doss" and co-defendant Hathaway as "Petitioner Hathaway." *See id.*

2

The police picked up Ms. Hambric. She identified Christopher Doss and both Petitioners in a photographic lineup and assisted detectives in recording a telephone call with Christopher Doss, in which he told her "to stop telling people what had happened" and "this is something that [they] should take to the grave." At trial, Detective Wood was able to identify Courtney Hambric and Christopher Doss in the videos played for the jury.

Courtney Hambric testified that she worked as an escort and received a telephone call from the victim inquiring about her "rates." Ms. Hambric explained that she was unavailable because she did not have transportation to meet the victim. About an hour later, Christopher Doss called Ms. Hambric, and she asked him to give her a ride to "get a room" in order to meet with the victim. She called the victim and arranged to meet at America's Best Value Inn. Christopher Doss and Petitioners picked up Ms. Hambric. On the way to the motel, Christopher Doss indicated that they were going to rob the victim. Petitioner Doss rented Room 118. Petitioner Doss hid in the bathroom, Petitioner Hathaway hid behind the door, and Christopher Doss remained in the vehicle. When the victim entered the room, Petitioner Hathaway stepped out and pointed a gun at the victim. After getting the victim's billfold and car keys, Petitioner Doss made the victim give him the PIN numbers for two ATM cards. Petitioner Doss told Ms. Hambric to go with Christopher Doss and Petitioner Hathaway in the victim's car to get money. After obtaining a total of $600.00 from two locations, they returned to the motel. She and Petitioner Hathaway got back into Christopher Doss's vehicle. Petitioner Doss came out of the motel room and got into the vehicle. As they drove away, Petitioner Doss said he shot the victim three times because he tried to escape.

Petitioner Doss fled to Texas where he was arrested in March 2010. The police were ultimately able to locate Petitioner Hathaway. They obtained fingerprints from Petitioner Hathaway which they were able to match with a thumbprint obtained from an interior door of Room 118. Michael Frizzell, a TBI special agent in the technical services unit, testified "that [he] helped prepare the visual presentation in this case as a testimonial aid for a particular [C]ricket phone number." He explained that he used a cell tower map for Davidson County that included information from the "call detail records" of the Cricket phone and the locations of the Mapco convenience store, Exxon convenience store, and America's Best Value Inn at issue in this case. Detective Russell Thompson testified that the locations of the cell towers used to route calls were consistent with Ms. Hambric's version of the events and Laquisha Hughes's statements that Petitioner Doss spent the night at her home.

*Doss*, 2020 WL 1466306, at *1–2 (internal citations omitted) (footnote added).

## III.    Claims

The petitioner asserts the following claims, which the court has rearranged for clarity:

3

1. The trial court erred by:

    A.    Denying the petitioner's motion to sever before trial (Doc. No. 23 at 3);

    B.    Admitting hearsay evidence at trial (*id.* at 4);

    C.    Failing to give the jury a lesser-included-offense instruction (*id.* at 16);[3]

    D    Imposing consecutive sentences (*id.* at 4);

    E.    Allowing dual convictions for a single course of conduct (*id.*); and

    F.    Failing to take appropriate action in response to the jury-misconduct allegation in the petitioner's motion for new trial. (*Id.*)

2. There is insufficient evidence to support the petitioner's convictions. (*Id.*)

3. Trial counsel was ineffective for failing to:

    A.    Investigate and produce a defense (*id.* at 3);

    B.    Obtain defense experts to rebut the State's experts (*id.* at 3, 10);

    C.    Obtain an independent cell tower expert (*id.* at 3);

    D.    Object to the introduction of a letter and instead agree to its redaction (*id.*); and

    E.    Object to the incomplete jury instruction for the charged offense of especially aggravated kidnapping. (*Id.* at 6–8.)[4]

4. Counsel was ineffective for failing to raise an issue in the motion for new trial, namely the incomplete jury instruction for the especially-aggravated-kidnapping charge. (*Id.* at 3.)[5]

---

[3] This claim is not a listed ground in the amended petition (*see* Doc. No. 26 at 3–4), but it is clearly presented within the body of the petition. Applying an appropriate liberal construction, the court considers this an independent claim. *See MacLloyd v. United States*, 684 F. App'x 555, 558 (6th Cir. 2017) (quoting *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985)) ("'The allegations of a pro se habeas petition . . . are entitled to a liberal construction,' which may 'require[] active interpretation in some cases to construe a pro se petition to encompass any allegation stating federal relief.'")

[4] This is not a listed ground, but the court considers it an independent claim because it is clearly presented in the body of the amended petition. *See MacLloyd*, 684 F. App'x at 558.

[5] This claim encompasses the first two grounds listed in the amended petition, as the court considers the petitioner's general claim of counsel's failure to "raise the issue of faulty jury instructions" (Doc. No. 23 at 3 (the petitioner's Ground 1)) subsumed into his more specific claim of counsel's failure to address the omission of a particular jury instruction. (*Id.* (the petitioner's Ground 2).)

4

5.        Counsel was ineffective on appeal for failing to:

        A.        Have the jury instructions transcribed (*id.*); and

        B.        Raise the issue of jury misconduct. (*Id.* at 4.)

6.        The TCCA erred on direct appeal by failing to properly apply *State v. White*, 362 S.W.3d 559 (Tenn. 2012). (*Id.* at 7–9.)[6]

## IV.    Legal Standard

Federal habeas relief for state prisoners is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Harrington v. Richter*, 562 U.S. 86, 97 (2011). AEDPA establishes a demanding standard for granting federal relief on claims "adjudicated on the merits" in state court. 28 U.S.C. § 2254(d). Under AEDPA, such a claim cannot be the basis for federal relief unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under Section 2254(d)(1), a state court's decision is "contrary to" clearly established federal law "'if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result].'" *Hill v. Curtin*, 792 F.3d 670, 676 (6th Cir. 2015) (en banc) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)). "Under the 'unreasonable application' clause of [Section] 2254(d)(1), habeas relief is available if 'the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the

---

[6] The court considers this an independent claim despite its not being a listed ground because it is asserted in the body of the amended petition. *See MacLloyd*, 684 F. App'x at 558.

prisoner's case.'" *Id.* (quoting *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008)). A state court's application is not unreasonable under this standard simply because a federal court finds it "incorrect or erroneous"—instead, the federal court must find that the state court's application was "objectively unreasonable." *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003)).

To grant relief under Section 2254(d)(2), a federal court must find that "the state court's factual determination was 'objectively unreasonable' in light of the evidence presented in the state court proceedings." *Young v. Hofbauer*, 52 F. App'x 234, 236 (6th Cir. 2002). State court factual determinations are only unreasonable "if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017) (quoting *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007)). "[I]t is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011) (citing *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011)).

Review of claims rejected on the merits in state court, however, is ordinarily only available to petitioners who "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). In Tennessee, a petitioner is "deemed to have exhausted all available state remedies for [a] claim" when it is presented to the TCCA. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. Sup. Ct. R. 39). "To be properly exhausted, each claim must have been 'fairly presented' to the state courts," meaning that the petitioner presented "the same claim under the same theory . . . to the state courts." *Wagner v. Smith*, 581 F.3d 410, 414, 417 (6th Cir. 2009) (citations omitted).

The procedural default doctrine is "an important 'corollary' to the exhaustion requirement," under which "a federal court may not review federal claims that . . . the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citations omitted). A claim also may be "technically exhausted, yet procedurally defaulted" where "a petitioner fails to present a claim in state court, but that remedy is no longer available to him." *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015) (citing *Jones v. Bagley*, 696 F.3d 475, 483–84 (6th Cir. 2012)).

To obtain review of a procedurally defaulted claim, a petitioner must "establish 'cause' and 'prejudice,' or a 'manifest miscarriage of justice.'" *Middlebrooks v. Carpenter*, 843 F.3d 1127, 1134 (6th Cir. 2016) (citing *Sutton v. Carpenter*, 745 F.3d 787, 790–91 (6th Cir. 2014)). Cause may be established by "show[ing] that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Davila*, 137 S. Ct. at 2065 (citations omitted). Prejudice requires a showing that the errors at trial worked to a petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Garcia-Dorantes v. Warren*, 801 F.3d 584, 598 (6th Cir. 2015) (quoting *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991)) (internal quotation marks omitted). And the manifest-miscarriage-of-justice exception applies "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

## V.    Analysis

The respondent contends that the petitioner's claims should be dismissed as not cognizable, without merit under AEDPA's demanding standard of review for claims adjudicated on the merits

7

in state court, or procedurally defaulted without cause. (Doc. No. 32 at 2). The court agrees and will address each category of claims in turn.

### A. Non-Cognizable Claims

A federal court can grant a state prisoner's request for habeas relief "only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). A ground for relief that does not assert a violation of federal law, therefore, is "outside the scope of federal habeas corpus review." *See Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citations omitted).

#### 1. Claim 1.B—Hearsay Evidence

In Claim 1.B, the petitioner asserts that the court erred by admitting hearsay evidence at trial, namely Detective Thompson's handwritten note on a photographic identification form stating that co-defendant Hambric identified the petitioner as the shooter. (Doc. No. 23 at 4, 15.) This claim was raised and rejected on direct appeal under state law. *See Doss*, 2014 WL 2592736, at *23. "A state court evidentiary ruling will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights." *Wilson v. Sheldon*, 874 F.3d 470, 475 (6th Cir. 2017) (quoting *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001)). "[A]s a general matter, 'state-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Id.* at 475–76 (quoting *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000)) (internal citation and quotation marks omitted). Here, co-defendant Hambric herself testified—separate from Detective Thompson—that the petitioner said he shot the victim and that she identified the petitioner from Thompson's photographic line-up. *See Doss*, 2014 WL

8

2592736, at *6–7. Accordingly, the petitioner has not shown that admission of Thompson's alleged hearsay evidence was fundamentally unfair. Claim 1.B is not subject to further review.

### 2. Claim 1.D—Consecutive Sentences

In Claim 1.D, the petitioner asserts that the court erred by ordering the 30-year sentence he received for especially aggravated robbery and especially aggravated kidnapping to run consecutively to the life sentence he received for murder. (Doc. No. 23 at 4, 15–16.) Again, this claim was raised and rejected on direct appeal as a matter of state law. *See Doss*, 2014 WL 2592736, at *25–27. A claim asserting that "the trial court's sentencing decision violated state law . . . is not cognizable on federal habeas review." *Noonan v. Burton*, No. 17-2458, 2018 WL 6584905, at *3 (6th Cir. Oct. 15, 2018) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). Although "convicted defendants . . . have a due process right to a fair sentencing procedure," *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000) (quoting *United States v. Anders*, 899 F.2d 570, 575 (6th Cir. 1990)), Tennessee's approach of allowing state court judges discretion to impose consecutive sentences after making "certain predicate factfindings" is not unconstitutional. *See Oregon v. Ice*, 555 U.S. 160, 163–64 & n.3 (2009). Accordingly, Claim 1.D will be denied.

### 3. Claim 2—Insufficient Evidence

The petitioner asserts that there was insufficient evidence to support his convictions because "the State failed to provide evidence to corroborate his co-defendant, Courtney Hambric's testimony against him." (Doc. No. 23 at 14.) This argument is based on Tennessee's rule that "a conviction cannot be based 'solely upon the uncorroborated testimony of an accomplice.'" *Cofer v. Lee*, No. 3:16-cv-671, 2019 WL 4016204, at *18 (E.D. Tenn. Aug. 26, 2019) (quoting *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001)) (footnote omitted). On direct appeal, as in the amended petition, the petitioner's insufficient-evidence argument focused exclusively on this state-law rule.

9

(*See* Doc. No. 30-16 at 43–48 (direct appeal brief arguing that "the State failed to sufficiently corroborate the testimony of [Hambric] to legally support [the petitioner's] conviction").) And the TCCA rejected the petitioner's argument under state law, listing ample evidence that corroborated Hambric's testimony. *See Doss*, 2014 WL 2592736, at *22. Tennessee's corroboration rule is "not one of constitutional magnitude," *Cofer*, 2019 WL 4016204, at *18 n.1 (citing *United States v. Gallo*, 763 F.2d 1504, 1518 (6th Cir. 1985)), because "the uncorroborated testimony of an accomplice may support a conviction under federal law." *United States v. Scott*, 716 F. App'x 477, 485 (6th Cir. 2017) (quoting *Gallo*, 763 F.2d at 1518). The petitioner's challenge to the TCCA's application of Tennessee's state-law corroboration rule, therefore, cannot provide a basis of federal habeas relief. *See Powell v. Berghuis*, 560 F. App'x 442, 449 (6th Cir. 2013) (citing *Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002)) ("[A] state law claim disguised as a [claim of insufficient evidence under *Jackson v. Virginia*, 443 U.S. 307 (1979)] . . . is not cognizable on federal habeas review."). Accordingly, Claim 2 will be denied.

### 4. Claim 6—Appellate Court Error

On direct appeal, the petitioner argued that the trial court erred by failing to instruct the jury as required by *State v. White*, 362 S.W.3d 559 (Tenn. 2012). *Doss*, 2014 WL 2592736, at *25. In *White*, "the Tennessee Supreme Court held that Tennessee trial courts in kidnapping cases must instruct the jury to determine whether the removal or confinement of a victim is essentially incidental to any other offense with which the defendant is charged or whether it is instead 'enough, standing alone, to support a [kidnapping] conviction.'" *Alston v. Genovese*, No. 20-5038, 2020 WL 3960581, at *2 (6th Cir. June 9, 2020) (citing *White*, 362 S.W.3d at 578). The TCCA found that the petitioner waived the *State v. White* issue by failing to raise it in his motion for new

trial. *See Doss*, 2014 WL 2592736, at *25. Here, in Claim 6, the petitioner asserts that the TCCA's waiver ruling was in error. (Doc. No. 23 at 7–9.)

"In general, the fact that a jury instruction was allegedly incorrect under state law is not a basis for federal habeas relief." *Ambrose v. Romanowski*, 621 F. App'x 808, 813 (6th Cir. 2015) (citing *Estelle*, 502 U.S. at 71–72). "The only exception is when a defective jury instruction 'by itself so infected the entire trial that the resulting conviction violates due process.'" *Alston*, 2020 WL 3960581, at *2 (quoting *Estelle*, 502 U.S. at 72). And in this case, moreover, the Tennessee Supreme Court acknowledged that the TCCA's waiver ruling was not a proper analysis under *State v. White* by independently determining that the trial court's failure to give a *White* instruction "was harmless beyond a reasonable doubt." (Doc. No. 30-26 at 57 (applying *White*, 362 S.W.3d at 580 n.20).) "This harmlessness determination is entitled to significant deference on habeas review, adding yet one more obstacle to an already difficult path to relief." *Id.* (citing *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015)).

The petitioner has not met the high bar of demonstrating that the Tennessee Supreme Court's harmlessness determination was objectively unreasonable. It was not unreasonable to determine that the State presented evidence of confinement beyond what was necessary to accomplish the aggravated robbery, as the assailants had already taken the victim's property (ATM cards) when they further confined him by tying his hands and holding him at gunpoint. *See Doss*, 2014 WL 2592736, at *6 (Hambric's testimony that Hathaway had the victim's ATM cards when she returned to the hotel room and saw the victim's hands being tied before leaving the petitioner in the room with the victim while the three co-defendants attempted to withdraw money using the victim's cards); *id.* at *2 (police officer's testimony that the victim's body was found with "[a] brown leather belt [] tied around one of his wrists, 'which made it appear that his hands had been

bound together'"). The petitioner, therefore, has not established that the omission of a *State v. White* jury instruction infected the entire trial and resulted in a due process violation. Claim 6 is not subject to further review.

### B. Adjudicated Claims

The petitioner properly exhausted one claim of trial court error and three claims of ineffective assistance.

#### 1. Claim 1.A—Motion to Sever

On the first morning of trial, trial counsel made an oral motion to sever the petitioner from co-defendant Hathaway, based on the State's intent to introduce a post-arrest interview between Detective Thompson and Hathaway. (Doc. No. 30-2 at 4–5.) Over the course of this interview, Thompson told Hathaway his theory of the facts underlying the offenses, made several references to the possibility that the petitioner was the shooter, and said, "I believe personally that [the petitioner] is the shooter." (*Id.* at 4–5; Doc. No. 30-3 at 5, 7–8.) Hathaway, in the interview, denied all involvement in the offenses and denied knowing the petitioner. (Doc. No. 30-2 at 6.) The court denied counsel's request for a severance, but it ordered the State to redact Thompson's statement about believing that the petitioner is the shooter, and it gave a limiting instruction when the Thompson-Hathaway interview was introduced, stating that the jury could not consider it as evidence in the State's case against the petitioner for any reason. (*Id.* at 8; Doc. No. 30-3 at 5–6, 9–10; Doc. No. 30-33 at 85–86, 88–89.)

On direct appeal, the petitioner did not take issue with the admission of co-defendant Hathaway's general denial, but he argued that Detective Thompson's interview statements required severance because they were derived from the hearsay statements of severed, non-testifying co-defendant Christopher Doss, and thus violated the Confrontation Clause. (Doc. No.

30-16 at 35–38.) Though the petitioner does not mention Christopher Doss by name in the section of the amended petition explaining this claim, the court liberally construes the amended petition to raise a Doss-based Confrontation Clause claim through the petitioner's reference to out-of-court statements by "co-defendants." (*See* Doc. No. 23 at 12.) The court also notes that co-defendant Courtney Hambric *is* mentioned by name in the context of this claim, however, so it is clear that the amended petition raises a Hambric-based Confrontation Clause claim as well. (*Id.* at 11–12.)

The respondent contends that any Hambric-based claim is procedurally defaulted (Doc. No. 32 at 27–29), but it is simpler to address this argument on the merits. *See Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1077 (6th Cir. 2015) (quoting *Arias v. Hudson*, 589 F.3d 315, 316 (6th Cir. 2009)) (noting that a federal court may "reach[] beyond the procedural-default analysis to address the underlying claim on the merits when it 'present[s] a more straightforward ground for decision'"). Even if Detective Thompson's interview statements were based on out-of-court statements by co-defendant Hambric, that did not raise any Confrontation Clause concerns because Hambric testified at trial and was subject to cross-examination. *See Doss*, 2014 WL 2592736, at *8 (summarizing Hambric's testimony on cross). A court may admit "statements by a witness to police officers during an interrogation" "without violating the Sixth Amendment if the witness is "'test[ed] in the crucible of cross-examination' at trial." *Levingston v. Warden, Warren Corr. Inst.*, 891 F.3d 251, 254 (6th Cir. 2018) (quoting *Crawford v. Washington*, 541 U.S. 36, 61 (2004)). Accordingly, even if Hambric's out-of-court statements were introduced at trial through Thompson's interview statements to co-defendant Hathaway, that did not supply a reason to sever the petitioner and Hathaway under the Confrontation Clause.

As to the Christopher Doss-based claim, the TCCA acknowledged and rejected the petitioner's argument as follows:[7]

> On appeal, Defendant Doss challenges "the statements of the Detective setting forth his theory of the case, delivered with the imprimatur of law enforcement, which were derived from the testimonial hearsay statements of severed, non-testifying codefendant Christopher Doss."
>
> The Defendant has not shown that the trial court abused its discretion when it denied his motion to sever. The specific statements challenged by Defendant Doss are as follows:
>
> > "I've been investigating this case almost a year." "Here's the story I got."
> >
> > > "You [Hathaway] and Harold [Doss] and Chris [Doss] picked up Courtney [Hambric]. Courtney sets up a date with a Japanese man from Kentucky, at the hotel room. You get to the hotel room, set up a plan. Chris stays outside, you and Harold and Courtney go in the room. When the man shows up, Courtney opens the door for him, lets him in, you and Harold tie him up on the bed. The three of you, you and Courtney and Chris leave in his car. Go to two different markets, withdraw money from the ATM machine. You stay in the car. You then return[,] Harold comes running out and said he had to shoot the man and he's dead in the hotel room. And you all leave in Harold's truck. You then get dropped off over at the apartments on White's Creek Pike. You and Harold and then that's kinda the end of your involvement that night."
> > >
> > > "[A]nd the evidence has been building for a year. And the, myself, the district attorney's office, we've talked about it."

---

[7] The TCCA did not mention the phrase "Confrontation Clause," but it recognized the substance of the petitioner's argument and made an outcome-determinative ruling. *See Doss*, 2014 WL 2592736, at *20 (making hearsay ruling); *United States v. Davis*, 577 F.3d 660, 670 (6th Cir. 2009) (quoting *United States v. Gibbs*, 506 F.3d 479, 486 (6th Cir. 2007)) ("[T]o constitute a Confrontation Clause violation, 'the statement must be used as hearsay.'"). The court thus presumes that the TCCA rejected the petitioner's Confrontation Clause argument on the merits. *See Johnson v. Williams*, 568 U.S. 289, 301 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted.")

14

> "Chris [Doss] has been in jail for six months or longer on this."

> "When you can tell us up front that, 'I was just there. I didn't have nothing to do with it. Harold did the shooting.'"

A motion to sever pursuant to Tennessee Rule of Criminal Procedure 14(b)(1) addresses statements of one co-defendant about another co-defendant in a joint trial. Defendant Doss does not challenge Defendant Hathaway's statements, but instead he challenges Detective Thompson's statements made during Detective Thompson's interview of Defendant Hathaway. In our view, Detective Thompson's statements to Defendant Hathaway during Detective Thompson's interview of Defendant Hathaway were not offered into evidence to prove the "truth of the matter asserted," therefore, the statements are not hearsay. *See* Tenn. R. Evid. 801(c). Detective Thompson's statements gave context to the questions that he asked Defendant Hathaway during his interview. The interview was properly admitted into evidence, and the trial court properly instructed the jury concerning their consideration of this evidence.

Accordingly, the trial court did not abuse its discretion when it denied Defendant Doss's motion to sever based upon the State's offer of a recorded interview between Defendant Hathaway and Detective Thompson. Defendant Doss is not entitled to relief as to this issue.

*Doss*, 2014 WL 2592736, at *20.

This ruling did not contravene or unreasonably apply clearly established federal law. For the admission of a testimonial statement to violate the Confrontation Clause, "the statement must be used as hearsay—in order words, it must be offered for the truth of the matter asserted." *Gibbs*, 506 F.3d at 486 (quoting *United States v. Pugh*, 405 F.3d 390, 399 (6th Cir. 2005)). The TCCA found that Detective Thompson's statements were offered not to prove the truth of the matter asserted, but to give context to Thompson's questions. Importantly, the trial court instructed the jury to that effect before introduction of the Thompson-Hathaway interview, and even then, the court clearly emphasized that the jury was to consider no aspect of the interview in the case against the petitioner. *Doss*, 2014 WL 2592736, at *19 ("I hereby instruct you that this evidence may be considered by you only as it relates to the guilt or innocence of Mr. Hathaway. *It cannot be*

15

*considered by you for any reason regarding [the petitioner]*. Furthermore, you are instructed that the statements, remarks and questions of the detectives contained in the interview are not evidence against Mr. Hathaway and cannot be considered by you as such unless Mr. Hathaway agreed with the statement, remark or question, otherwise *the inclusion of the detective's theories of or comments about the case is simply to place in context the responses to Mr. Hathaway*.") (emphasis added). Moreover, the State did not reference the Thompson-Hathaway interview in its closing argument. (*See* Doc. No. 30-10 (transcript)); *Davis*, 577 F.3d at 670 n.7 (distinguishing *United States v. Hearn*, 500 F.3d 479, 483–84 (6th Cir. 2007)) (noting that an out-of-court statement to law enforcement, later introduced at trial, may not be relied on for the truth of the matter asserted where it contains unnecessary detail and is relied upon in a prosecutor's closing argument). "In short, the jury was properly invited to focus on [Hathaway's] reaction to the statement[s], not the 'truth' of its substance." *See id.* at 667 (footnote omitted) (holding that an officer's statements offered as background evidence for an investigation were not hearsay).

It bears emphasizing that, even if this court were to disagree with the TCCA's ruling, the court could not grant habeas relief unless the ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. The TCCA's hearsay ruling does not rise to this level. And because it was not unreasonable for the TCCA to conclude that Thompson's interview statements were not hearsay, no Confrontation Clause issue with Christopher Doss required severance of the petitioner and Hathaway. For all of these reasons, Claim 1.A will be denied.

## 2. Ineffective Assistance of Counsel

The petitioner asserts that he received ineffective assistance of counsel in several ways. The TCCA applied the federal standard governing these claims—*Strickland v. Washington*, 466

U.S. 668 (1984)—to reject three ineffective-assistance claims on the merits. *Doss*, 2020 WL 1466306, at \*7–9.

Under *Strickland*, a petitioner must show (1) deficient performance and (2) prejudice to the defendant. *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citing *Strickland*, 466 U.S. at 687). Counsel's performance is deficient where it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Further, when a petitioner raises an exhausted claim of ineffective assistance in a federal habeas petition, "[t]he pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standard," but "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. This amounts to a "'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).

### i.     Claim 3.C—Cell Tower Expert

At trial, the State called TBI special agent Michael Frizzell to testify regarding cell phone records for a phone number associated with the petitioner—specifically, Frizzell prepared a map "of the Davidson County area that included cell tower locations from Metro Mapping and Planning" and "information he had provided from the call detail records and the locations of the

17

Mapco gas station, Exxon gas station, and America's Best Value Inn at issue in this case." *Doss*, 2014 WL 2592736, at *15.

The petitioner asserts that trial counsel should have obtained an expert to rebut Frizzell's testimony on cell towers. (Doc. No. 23 at 13–14.) The TCCA rejected this claim by adopting the post-conviction court's deficiency ruling. *See Doss*, 2020 WL 1466306, at *8. The post-conviction court ruled:

> At the post-conviction hearing, trial counsel testified that he had filed a motion to exclude testimony regarding cell phone tower transmission, and the motion was denied. He also testified that during trial he was able to point out to the jury that cell phone towers are not reliable locators of persons. Further, he believed that the statement provided by the cell phone provider was actually favorable to his client. Besides, a petitioner who claims ineffective assistance of counsel based on a failure to call a witness must bring in a witness to testify at the post-conviction hearing, for it is not the trial court's prerogative to speculate as to what the witness would say. *State v. Black*, 794 S.W.2d 752, 758 (Tenn. Crim. App. 1990). Petitioner has not shown that trial counsel was deficient in this area.

*Id.* at *5.

This ruling was reasonable. Trial counsel attempted to keep the State from presenting evidence on cell tower locations by filing a motion in limine (Doc. No. 30-1 at 31–35), and when that was unsuccessful, he elicited clear testimony from multiple witnesses to undercut the reliability of the cell tower evidence for establishing the petitioner's location. *See Doss*, 2014 WL 2592736, at *14 (record custodian's testimony that "cell tower information did not provide the exact location of the cellular telephone in use but rather provided a general area of use," and that the company statement specified that "[t]he only purpose of the towers is to be a part of a network that provides good wireless to our customers"); *id.* at *15 (Frizzell's testimony that "cell phone detail records provide general geographical location and not specific location of the cellular telephone user"); (Doc. No. 30-6 at 65 (Thompson's testimony agreeing that cell company statement said "our witnesses will testify that the signal does not necessarily go to the closest tower

geographically").) And at the post-conviction hearing, trial counsel testified that he was not aware of a cell tower expert who could have provided testimony that significantly differed from the testimony he elicited at trial. (Doc. No. 30-28 at 30–31.) It was therefore reasonable for the state courts to determine that trial counsel was not deficient for failing to obtain a cell tower expert.

Additionally, the state court's rejection of this claim was reasonable because the petitioner did not present a cell tower expert at the post-conviction hearing. *See Hutchison v. Bell*, 303 F.3d 720, 748–49 (6th Cir. 2002) (citations omitted) ("[A] petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material."); *Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) ("In the absence of any evidence showing that [petitioner's proffered mitigating witnesses] would have offered specific favorable testimony, [petitioner] cannot show prejudice from counsel's strategy recommendation not to introduce this evidence."). For all of these reasons, Claim 3.C will be denied.

### ii.     Claim 3.D—The Petitioner's Letter

When law enforcement apprehended the petitioner in Texas, they recovered several letters written but unsent by the petitioner. (Doc. No. 30-33 at 102.) As the State was about to reference these letters during Detective Thompson's trial testimony, trial counsel requested to raise some issues outside the presence of the jury. (*Id.* at 101–02.) The court ruled that, in discussing the letters, Thompson could not "talk about [the petitioner's] prior criminal activity" or "read those portions that reference [the petitioner's] past." (*Id.* at 103–05.) The parties then went through the letters to give trial counsel an opportunity to request redaction of specific language, and as a result of this process, the court agreed to redact a reference to "jail talk." (*See id.* at 109–22.) Trial counsel

also requested redaction of "an ambiguous reference to life in jail," but the court denied that request. (*Id.* at 122–23.)

The petitioner asserts that trial counsel was ineffective because he did not obtain suppression of these letters and instead "agree[d] to the redaction of parts that alluded to petitioner having been in jail." (Doc. No. 23 at 13.) The TCCA rejected this claim as follows:

> Trial counsel did object to the letter being introduced. When counsel determined during the jury-out hearing that his objection was going to be denied, he made a strategic decision to seek redaction of the letter. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. Petitioner Doss has completely failed to show that trial counsel's performance was in any [way] deficient in his handling of the letter, and he is not entitled to relief on this issue.

*Doss*, 2020 WL 1466306, at *8 (citation omitted).

This deficiency ruling was reasonable. Trial counsel requested and obtained a jury-out hearing on the letters before their introduction, which had the same effect as an objection (even if counsel did not say the word "objection"). *See Humility of Mary Health Partners v. N.L.R.B.*, No. 09-CV-0453, 2010 WL 796824, at *10 (N.D. Ohio Mar. 3, 2010) (citations omitted) ("Courts do not generally require that particular magic words be used because it is the *substance* of statements that is paramount."). Early on in this hearing, the court telegraphed its intention to allow the letters into evidence in some form. (*See* Doc. No. 30-33 at 103 ("[Thompson] needs to make sure he doesn't generally talk about prior criminal activity. We will make arrangements to redact before it's submitted to the jury for their consideration.").) Given this development, trial counsel testified, counsel chose to focus on "try[ing] to take out the things that [he] thought were particularly harmful to [the petitioner]." (Doc. No. 30-28 at 33–34.) It was reasonable for the TCCA to determine that counsel's strategy fell within the wide range of reasonable professional assistance. *See Green v. MacLaren*, No. 17-1249, 2017 WL 3973956, at *2 (6th Cir. Aug. 2, 2017) (quoting

20

*Miller v. Francis*, 269 F.3d 609, 615–16 (6th Cir. 2001); *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001)) ("[A] 'strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness.'"). And the petitioner has not identified an argument that counsel should have made that would have resulted in suppression of the letters. Accordingly, Claim 3.D is without merit.

### iii.      Claim 5.B—Juror Misconduct

In the motion for new trial, trial counsel requested an evidentiary hearing to explore the possibility that the jury foreman had committed misconduct by failing to disclose a personal relationship with the trial judge. (Doc. No. 30-1 at 69, 78.) The court entered an order allowing trial counsel to contact all twelve jurors. (*Id.* at 82–83.) Trial counsel and the State questioned the jury foreman and one other juror at a subsequent evidentiary hearing (Doc. No. 30-13 at 10–20), and the court ruled that any claim of jury misconduct was "clearly refuted." (*Id.* at 29–30.)

The petitioner asserts that trial counsel was ineffective for failing to include the jury-misconduct claim on appeal. (Doc. No. 23 at 4, 14.) The TCCA rejected this claim on post-conviction appeal, finding that trial counsel made a strategic decision not to appeal the claim because he determined the issue to be without merit. *Doss*, 2020 WL 1466306, at *9.

This ruling was reasonable. "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). To establish deficiency for failing to raise a claim, a petitioner "must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.'" *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003) (quoting *Smith*, 528 U.S.

at 289). Counsel testified that he interviewed all jurors in advance of the evidentiary hearing, questioned the jury foreman at the hearing, and determined that the issue of jury misconduct "did not appear to be a meritorious issue at all. That's why it was not raised." (Doc. No. 30-28 at 38–39; *see also id.* at 40 ("I made a judgement that the issues that I included in the direct appeal were the most significant issues.").) The evidentiary hearing testimony of the jurors supports this conclusion. (*See* Doc. No. 30-13 at 10–20 (testifying that the foreman's relationship with the judge did not influence deliberations).) Counsel, therefore, properly exercised his professional judgment to select the strongest claims for appeal. Claim 5.B is without merit.

### C.      Procedurally Defaulted Claims

The petitioner's remaining claims are procedurally defaulted. This includes three claims of trial court error and five claims of ineffective assistance.

#### 1.      Claims 1.C, 1.E, 1.F—Trial Court Errors

In Claim 1.C, the petitioner asserts that the trial court erred by failing to instruct the jury that second-degree murder is a lesser-included-offense of felony murder. (Doc. No. 23 at 16.) In Claim 1.E, he asserts that the trial court erred by allowing dual convictions of felony murder and second-degree murder for a single course of conduct. (*Id.* at 4, 16.) And in Claim 1.F, he asserts that the trial judge erred in ruling on the jury-misconduct claim in the motion for a new trial by failing to recuse himself, excuse a juror for bias, or declare a mistrial. (*Id.* at 4.)

The petitioner did not present these claims to the TCCA on either direct or post-conviction appeal, and no state court remedies remain for doing so. *See* Tenn. Code Ann. § 40-30-102(c) (establishing Tennessee's "one-petition" limitation on post-conviction relief); *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Fletcher v. Tennessee*, 951 S.W.2d 378, 380–81 (Tenn. 1997)) (explaining the three narrow circumstances in which a state prisoner may file a motion to

22

reopen post-conviction proceedings, none of which applies to these claims). Accordingly, these claims are procedurally defaulted. *See Atkins*, 792 F.3d at 657.

As cause to overcome his procedural default, the petitioner points to ineffective assistance of counsel at trial, on appeal, and in post-conviction proceedings. (*See* Doc. No. 23 at 4–5.) As for trial and appellate counsel, it is true that ineffective assistance "can constitute cause for a procedural default," *Hodges*, 727 F.3d at 530 (citing *Carrier*, 477 U.S. at 492), but "'an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.'" *Id.* (quoting Edwards v. Carpenter, 529 U.S. 446, 453 (2000)). That is the case here for two out of three claims discussed above, as the petitioner did not exhaust a claim of trial or appellate ineffectiveness that relates to Claim 1.C (omission of a lesser-included-offense instruction for felony murder) or Claim 1.E (dual convictions for felony murder and second-degree murder).

As for Claim 1.F, however, the petitioner exhausted a claim that counsel was ineffective for failing to raise the jury-misconduct claim on appeal. As an independent ground for habeas relief, this claim is subject to AEDPA's deferential standard of review. *Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 225 (6th Cir. 2019) (citing *Joseph*, 469 F.3d at 459). And as discussed above, the TCCA's rejection of this claim was reasonable. But as an assertion of cause to excuse a procedural default, this claim is subject to de novo review. *Id.* (citing *Joseph*, 469 F.3d at 459). The court will therefore revisit counsel's decision to omit the jury-misconduct claim on appeal in this context.

Even stripped of AEDPA's deference to state courts, this court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012) (quoting *Strickland*, 466

23

U.S. at 689). "[T]he presumption of effective assistance" afforded to appellate counsel "will not be overcome unless" counsel omitted claims that "are clearly stronger than those presented on appeal." *Powell v. Berghuis*, 560 F. App'x 442, 452 (6th Cir. 2013) (citing *Smith*, 528 U.S. at 288). "Further, to demonstrate prejudice in this context, a petitioner must show a reasonable probability that his claims would have succeeded on appeal." *Id.* (citing *Smith*, 528 U.S. at 285–86). Based on counsel's out-of-court interviews with all twelve jurors and the evidentiary hearing testimony of two jurors, counsel made a strategic decision to omit the jury-misconduct claim from the appeal in favor of claims that he perceived to be stronger. The petitioner has not demonstrated that this decision fell outside the wide range of reasonable professional assistance. *Smith*, 528 U.S. at 288 (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)) ("[I]t is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent."). Because this claim of appellate ineffectiveness is meritless under a de novo review, it cannot serve as cause to excuse the default Claim 1.F.

Finally, the ineffective assistance of post-conviction counsel can only act as "cause to overcome the default of a single claim—ineffective assistance of trial counsel." *Davila*, 137 S. Ct. at 2062–63 (discussing *Martinez v. Ryan*, 566 U.S. 1 (2012); *Trevino v. Thaler*, 569 U.S. 413 (2013)). It cannot excuse the default of the trial court errors asserted in Claims 1.C, 1.E, and 1.F. And without any other allegation of cause, these three claims are not subject to further review.

### 2. Claims 3.A, 3.B, 3.E, 4, and 5.A—Ineffective Assistance

The petitioner's remaining claims are for ineffective assistance of counsel. The petitioner defaulted these claims by failing to present them to the TCCA on post-conviction appeal. *See* Tenn. Code Ann. § 40-30-102(c); *Hodges*, 727 F.3d at 530. As cause to overcome this default, the petitioner again asserts that he received ineffective assistance of counsel at trial, on appeal, and in

post-conviction proceedings. (*See* Doc. No. 23 at 4–5.) The petitioner cannot rely on an assertion of trial or appellate ineffectiveness to excuse this default, however, because the petitioner did not exhaust a claim of ineffectiveness that pertains to Claims 3.A, 3.B, 3.E, 4, and 5.A. *See Hodges*, 727 F.3d at 530 (quoting *Edwards*, 529 U.S. at 453) ("[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.").

A habeas petitioner may, in some circumstances, rely on *Martinez v. Ryan* to establish the "cause" necessary to obtain review of an otherwise defaulted ineffectiveness claim by pointing to post-conviction counsel's alleged ineffectiveness. 566 U.S. at 17. But, for the following reasons, *Martinez* cannot be used for that purpose here.

### i.    Claim 5.A—Appellate Ineffectiveness

In Claim 5.A, the petitioner asserts that counsel was ineffective on appeal for failing to have the jury instructions transcribed. (Doc. No. 23 at 3, 6.) *Martinez*, however, does not extend to claims of appellate ineffectiveness. *See Gerth v. Warden, Allen Oakwood Corr. Inst.*, 938 F.3d 821, 832 (6th Cir. 2019) (explaining that *Davila* "declined to expand *Martinez* to procedurally defaulted claims of ineffective assistance of appellate counsel"). Accordingly, this claim is procedurally defaulted without cause.

### ii.    Claim 3.E—Defaulted on Appeal

In Claim 3.E, the petitioner asserts that trial counsel was ineffective for failing to object to the omission of a *State v. White* instruction for the charged offense of especially aggravated kidnapping. (Doc. No. 23 at 6–8.) The petitioner raised this claim in his first amended post-conviction petition (Doc. No. 30-27 at 7), and the post-conviction court denied it. (*Id.* at 92.) The petitioner did not raise this claim on post-conviction appeal. *Martinez* "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of

25

ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons." 566 U.S. at 16. In other words, "attorney error at state post-conviction appellate proceedings cannot excuse procedural default." *West v. Carpenter*, 790 F.3d 693, 699 (6th Cir. 2015). Accordingly, the petitioner cannot rely on any alleged post-conviction ineffectiveness to excuse the default of Claim 3.E, and it is not subject to further review.

### iii.    Claims 3.A, 3.B, 4—Insubstantial

That leaves Claims 3.A, 3.B, and 4. To excuse the default of these claims under *Martinez*, several requirements must be met, including that the underlying claim is "substantial." *Abdur'Rahman v. Carpenter*, 805 F.3d 710, 713 (6th Cir. 2015) (quoting *Martinez*, 566 U.S. at 17). "A substantial claim is one that has some merit and is debatable among jurists of reason." *Id.* (citing *Martinez*, 566 U.S. at 14). "In the converse, a claim is insubstantial when 'it does not have any merit'" or "'is wholly without factual support.'" *Porter v. Genovese*, 676 F. App'x 428, 432 (6th Cir. 2017) (quoting *Martinez*, 566 U.S. at 15–16).

In Claim 3.A, the petitioner asserts that trial counsel was ineffective for failing to investigate and produce a defense for the petitioner. (Doc. No. 23 at 3.) Trial counsel's post-conviction testimony, however, reflects that his investigation of the case and preparation for trial were far from deficient. (*See* Doc. No. 30-28 at 27–29, 46, 62–63 (testifying that he went through every piece of discovery with the petitioner over 33 pre-trial visits; conducted an independent investigation of the case; obtained information for cross-examination of co-defendant Hambric at trial, including by personally interviewing several people associated with Hambrick; and filed a motion in limine to attempt to prevent the admission of cell tower location evidence).) The petitioner acknowledged many of trial counsel's efforts at the post-conviction hearing. (*See id.* at 11, 21–22 (testifying that trial counsel met with him, went over discovery, and discussed strategies

that defense counsel intended to use at trial).) In the amended petition, moreover, the petitioner does not identify any particular investigation that counsel should have pursued (aside from a conclusory reference to consulting with experts, discussed below). (*See* Doc. No. 23 at 10.) Accordingly, Claim 3.A is insubstantial. *See Hutchison*, 303 F.3d at 748–49 (citations omitted) ("[A] petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material.").

In Claim 3.B, the petitioner asserts that trial counsel was ineffective for failing to obtain defense experts to rebut the State's experts. (Doc. No. 23 at 3.) The petitioner exhausted a specific claim of ineffectiveness regarding counsel's decision not to retain a cell tower location expert, and as discussed above, the TCCA's rejection of that claim was reasonable. Beyond that, however, the petitioner does not explain what kind of expert counsel should have obtained or how expert testimony would have helped his case. (*See id.* at 10.) Claim 3.B, therefore, is a "conclusory allegation[] of ineffective assistance" that is "insufficient to state a constitutional claim." *Wogenstahl*, 668 F.3d at 335 (citing *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998)); *see also Kendrick v. Parris*, 989 F.3d 459, 472 (6th Cir. 2021) (quoting *Harrington*, 562 U.S. at 111) ("*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense."). This claim is insubstantial.

Finally, in Claim 4, the petitioner asserts that counsel failed to raise a claim in the motion for new trial regarding the omission of a *State v. White* jury instruction. (Doc. No. 23 at 3, 6.) This instruction, to restate, applies in kidnapping cases and requires "the jury to determine whether the removal or confinement of a victim is essentially incidental to any other offense with which the defendant is charged or whether it is instead 'enough, standing alone, to support a [kidnapping]

conviction.'" *Alston*, 2020 WL 3960581, at *2 (citing *White*, 362 S.W.3d at 578). The TCCA ruled on direct appeal that counsel waived this issue by failing to raise it in his motion for new trial. *Doss*, 2014 WL 2592736, at *25. This ruling, however, was error, as counsel raised this issue in the memorandum supporting his motion for new trial. (*See* Doc. No. 30-1 at 79.) The Tennessee Supreme Court acknowledged as much when it found that the TCCA's waiver ruling did not amount to a proper analysis under *White*. (*See* Doc. No. 30-26 at 57.) Accordingly, because counsel did what the petitioner claims he should have done, Claim 4 is without merit.

## VI. Request for Counsel and an Evidentiary Hearing

In his reply, the petitioner requests the appointment of counsel and an evidentiary hearing to explore his allegation of jury misconduct. (Doc. No. 36 at 1, 4–7.) This request will be denied.

"[A]lthough state prisoners may occasionally submit new evidence in federal court, 'AEDPA's statutory scheme is designed to strongly discourage them from doing so.'" *Shoop v. Twyford*, 142 S. Ct. 2037, 2044 (2022) (quoting *Pinholster*, 563 U.S. at 186). When a habeas petitioner requests an evidentiary hearing, a federal court "must determine at the outset whether the new evidence sought could be lawfully considered." *Id.*

To restate, the petitioner raised a jury-misconduct claim in the motion for new trial, the trial court rejected it following an evidentiary hearing, and counsel did not raise it on direct appeal. The petitioner asserts two claims related to this issue in the amended petition. In Claim 1.F, he challenges the trial court's denial of his jury-misconduct claim, but, as discussed above, this claim is procedurally defaulted without sufficient cause. A habeas petitioner is not entitled to an evidentiary hearing for such a claim. *See Cammuse v. Morgan*, 105 F. App'x 667, 670 n.4 (6th Cir. 2004) (declining to consider whether evidentiary hearing was required for habeas claim that was procedurally defaulted where petitioner had "not made a showing sufficient to excuse that

default"). And in Claim 5.B, the petitioner challenges counsel's decision not to raise the jury-misconduct claim on direct appeal, but that claim was adjudicated on the merits in state court, so this court is "obligated to decide the [claim] based solely on the state court record." *Sheldon v. Black*, No. 20-4156, 2021 WL 1654419, at *3 (6th Cir. Apr. 20, 2021) (citing *Pinholster*, 563 U.S. at 181–82; *Mitchell v. Genovese*, 974 .3d 638, 650 (6th Cir. 2020)).[8] The petitioner, accordingly, has not established that the court can consider new evidence on the jury-misconduct issue.

The petitioner also requests the appointment of counsel. The court is not required to appoint counsel for a habeas petitioner "unless counsel is 'necessary for effective discovery' or an evidentiary hearing is needed." *Scott v. Winn*, No. 18-1845, 2018 WL 5309805, at *1 (6th Cir. Oct. 22, 2018) (citing Habeas Rules 6(a) and 8(c)). Here, the petitioner is not entitled to discovery and an evidentiary hearing is not needed. *See Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997)) ("[A] court must provide discovery in a habeas proceeding only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'"); *Vizcaino-Ramos v. Lindamood*, No. 1:14-cv-1230-STA-egb, 2017 WL 5163588, at *4 (W.D. Tenn. Nov. 7, 2017) ("[I]f the claim is procedurally defaulted and the default is unexcused, discovery on the claim would be futile[.]"). Accordingly, the petitioner's request will be denied.

## VII.    Conclusion

For these reasons, the petitioner is not entitled to relief under Section 2254, his request to appoint counsel and hold an evidentiary hearing will be denied, and this action will be dismissed.

---

[8] The petitioner also asserts that the TCCA refused to consider his jury-misconduct claim on direct appeal based on counsel's failure to raise it in a motion for new trial (Doc. No. 36 at 5), but that ruling applied to co-defendant Hathaway, not the petitioner. *See Doss*, 2014 WL 2592736, at *30.

Because this is a "final order adverse to" the petitioner, the court must grant or deny a certificate of appealability (COA). Habeas Rule 11(a). A COA requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition [is] denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 253 (6th Cir. 2017) (quoting *Slack*, 529 U.S. at 484).

For the reasons stated throughout the court's analysis, the court concludes that the petitioner has not satisfied these standards and will deny a COA.

An appropriate order is filed herewith.

ALETA A. TRAUGER
United States District Judge